Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

YORAM MOR,

                            Plaintiff,

            v.

KILILO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                            Defendant.

Civil Action No. 21-1730 (JMV)

OPINION

VAZQUEZ, DISTRICT JUDGE

Before the Court is Plaintiff Yoram Mor's appeal of Administrative Law Judge Kenneth Ayers' (the "ALJ") decision denying Plaintiff's application for disability insurance benefits ("DIB") benefits under Title II the Social Security Act (the "Act"), 42 U.S.C. §§ 1381 *et. seq*. The Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reviewed the administrative record, D.E. 5 ("R."); Plaintiff's Brief, D.E. 10 ("Br."); Defendant's Opposition, D.E. 14 ("Opp."); Plaintiff's Supplemental Brief, D.E. 19 ("Supp. Br."); and Defendant's Supplemental Opposition, D.E. 20 ("Supp. Opp."). The Court also heard oral argument. For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Because the Court writes primarily for the benefit of the parties, only the essential facts are recounted here. On August 5, 2014, Plaintiff filed for DIB, alleging an onset date of June 6, 2013. R. at 97, 110. Plaintiff's date of last insured was December 31, 2016, *id.*, leaving the relevant timeframe from June 6, 2013 to December 31, 2016. Following state agency denial, Plaintiff had

a hearing before the ALJ on May 24, 2017, during which a vocational expert testified.  *Id.* at 66-96.  Plaintiff was also represented by counsel.  *Id.*  On August 25, 2017, the ALJ found that Plaintiff was not disabled.

On February 20, 2019, the Appeals Council vacated the ALJ's decision.  *Id.* at  145-46.  Among other things, the Appeals Council found that the ALJ had not addressed an apparent contradiction in his opinion.  *Id.* at 145.  The ALJ had accorded "great weight" to a report from Yair Litvin, M.D., but the doctor had also opined that Plaintiff could sit less than six hours a day.  *Id.*  On remand, the Appeals Council ordered the ALJ to do the following:

> Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examination and existing medical evidence (20 CFR 404.1512).  The additional evidence may include, if warranted and available, consultative examinations and medical source opinions about what the claimant can still do despite the impairments.

*Id.* at 146.  The Appeals Council further ordered the ALJ to evaluate Plaintiff's mental impairments "in accordance with the special technique described in 20 CFR [§] 404.1520a" and to give additional consideration to Plaintiff's maximum residual function capacity in accordance with certain regulations and rulings.  *Id.*

On remand, the ALJ held another hearing on August 19, 2019; a vocational expert testified, and Plaintiff was represented by counsel.  *Id.* at 32-64.  On October 14, 2019, the ALJ again found that Plaintiff was not disabled.  *Id.* at 14-24.  In seeking review from the Appeals Council, Plaintiff asserted (among other things) that the ALJ had not followed the remand order.  *Id.* at 287.  The Appeals Council denied review on December 18, 2020.  *Id.* at 1-6.

Plaintiff filed the instant appeal on February 2, 2021.  D.E. 1

## II.    LEGAL STANDARD

### A.    Standard of Review

The Court applies plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated that "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his

analysis.  Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### B.    Determining Social Security Benefits

To qualify for DIB, a claimant must establish that he is "disabled."  42 U.S.C. § 1381. "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period."  *Fargnoli v. Halter,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted).  A claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).  A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42. U.S.C. § 423(d)(3).

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled.  *See* 20 C.F.R. § 416.920.  If the determination at a particular step is dispositive of whether a claimant is or is not disabled, the inquiry ends.  20 C.F.R. § 416.920(a)(4).  The burden rests on the plaintiff to prove steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At step five, the burden shifts to the government.  *Id.*

At step one, a claimant must demonstrate that he has not engaged in any substantial gainful activity since the onset date of his disability.  20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i).

Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant demonstrates that he has not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, a claimant must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

At step three, the ALJ must assess the medical evidence and determine whether the claimant's severe impairment(s) (alone or in combination) meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four. Before reaching step four, the ALJ must first determine a claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a plaintiff can do despite his limitations; all relevant evidence is considered. 20 C.F.R. § 416.945(a). At step four, the ALJ determines whether the claimant's RFC permits him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv)

& 416.920(a)(4)(iv).  If the claimant lacks the RFC to perform any work he had done in the past, the analysis proceeds.

In the final step, the burden shifts to the Commissioner to produce evidence demonstrating that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## III.   DISCUSSION

Plaintiff argues five issues on appeal:  (1) the removal statute that governs the Commissioner violates the Constitution; (2) the ALJ failed to comply with the Appeal Council's remand order; (3) the ALJ erred at step three; (4) the ALJ failed to properly consider Plaintiff's chronic pain syndrome; and (5) the ALJ failed to articulate proper support for the RFC.  Br. at 15-32.  The Court addresses each in turn.

### A.  Constitutionality of the Commissioner's Removal

Plaintiff first argues that the removal statute as to the Commissioner is unconstitutional. Br. at 15.  As a result, Plaintiff concludes, the Commissioner lacked the power to delegate authority to the ALJ, so the ALJ's decision must be vacated.  *Id.* at 16.  Defendant does not contest the unconstitutionality of the relevant statute but argues that Plaintiff has not shown the required nexus to his case, along with making other arguments.  Opp. at 9-20.

To be clear, Plaintiff does not attack the constitutionality of the Commissioner's appointment but instead assails the legality of the Commissioner's statutory removal protections. The Commissioner of Social Security is appointed pursuant to 42 U.S.C. § 902.  That statute provides in relevant part as follows:  "The Commissioner shall be appointed for a term of 6 years . . . .  An individual serving in the office of Commissioner *may be removed from office only*

*pursuant to a finding by the President of neglect of duty or malfeasance in office.*" 42 U.S.C. § 902(a)(3). The highlighted language, which only permits the President to remove a commissioner for cause, is at the heart of Plaintiff's argument.

The Supreme Court recently addresses a similar statutory provision in *Collins v. Yellen*, -- U.S. --, 141 S. Ct. 1761 (2021). *Collins* concerned the Federal Housing Finance Agency ("FHFA"), which was led by single Director. *Id.* at 1770. While the Director was appointed by the President, the President could only remove the Director for cause. *Id.* at 1770, 1771 (citing 12 U.S.C. §§ 4512(a), (b)(2)). In comparison, the Court found, an Acting Director could be removed without a good cause showing. *Id.* at 1782-83.

The *Collins* Court concluded that the "for cause" requirement was unconstitutional because it violated the separation of powers. *Id.* 1783. Indeed, the Court in *Collins* observed that its conclusion was essentially compelled by its prior decision in *Seila Law* in which the Court ruled that Congress could not limit the President's power to remove the Director of the Consumer Financial Protection Bureau to occurrences of "'inefficiency, neglect, or malfeasance.'" *Id.* (quoting *Selia Law LLC v. CFPB*, 591 U.S. --, 140 S. Ct. 2183, 2197 (2020)). The *Collins* Court reasoned that "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Id.* at 1787 (quoting *Selia Law LLC*, 140 S. Ct. at 2205).

The Court in *Collins* next turned the appropriate relief that could be accorded for the constitutional violation. *Id.* Because an Acting Director could be removed at will, the Court noted, any action taken by an Acting Director would not violate the constitution. *Id.* As to the Director, the Court made an important distinction between appointment and removal:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally

> limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the [relevant contractual] amendment as void.

*Id.* (emphasis in original).  The *Collins* Court concluded that the unconstitutional provision could nevertheless potentially inflict compensable harm.  The Court provided two examples:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1788.  The Supreme Court remanded the matter to rule on this issue in the first instance.  *Id.*

In a concurring opinion, Justices Thomas "seriously doubted" that the plaintiffs "could show that any relevant action by an FHFA Director violated the Constitution."  *Id.* at 1795 (Thomas, J., concurring).  Justice Thomas explained that it was not enough for the plaintiffs to show that a statute was unlawful, they must also demonstrate that unlawful action was taken.  *Id.* at 1790.  Justice Kagan similarly concurred, agreeing that "plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—*only when the President's inability to fire an agency head affected the complained-of decision*[.]"  *Id.* at 1801 (Kagan, J., concurring).

In short, the plurality opinion along with the concurrences of Justices Thomas and Kagan reflect that there must be an adequate nexus between the unconstitutional provision and the action at issue.  As noted, there is no issue as to the legality of a Commissioner's appointment so, like *Collins*, the Court focuses on the removal provision in 42 U.S.C. § 902(a)(3).  Defendant does not argue that the statute is constitutional.  Pursuant to *Collins* and *Selia Law*, Section 902(a)(3) unconstitutionally impinges on the President's authority to remove the Commissioner.  Thus, the

only issue for the Court to decide is whether Plaintiff has adequately demonstrated the necessary nexus between Section 902(a)(3) and the ALJ's decision.

Defendant argues an Acting Commissioner ratified the appointment of the ALJ in this matter, and the Acting Commissioner could have been terminated at will by the President.  Opp. at 9.  Plaintiff does not contest this point.  Thus, there is no issue as to the constitutionality of the ALJ's appointment.  The ALJ's operative decision was issued on October 14, 2019.  Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case).  As a result, the requisite nexus is not met, and the Court denies Plaintiff's appeal on this ground.

### B.     Failure to Comply with the Remand Order

Plaintiff next argues that the ALJ failed to comply with the Appeals Council's remand order.  Br. at 18.  Specifically, Plaintiff asserts that the ALJ failed to address the contradiction in the weight afforded to Dr. Litvin's opinion, failed to refer to evidence contradicting Plaintiff's third-party statement, and failed to sufficiently assess different mental impairments.  *Id.*  The Commissioner responds that the ALJ did follow the remand order.  Opp. at 29-31.

The Court asked for supplemental briefing as to its authority to consider the issue on appeal. The Court focused on the fact that the Appeals Council was in the best position to determine whether its remand order had been complied with, and here, the Appeals Council did not remand the matter again following the ALJ's second decision.  Plaintiff concedes that district courts in this circuit have found that a district court does not have such authority.  Supp. Br. at 1 n.1 (citations omitted).  Plaintiff nevertheless contends that the Court has authority to review a legal error, and an ALJ's failure to follows 20 C.F.R. § 404.977(b) constitutes such error.  *Id.* at 2.  The

Commissioner reiterates that the ALJ did follow the remand order and, to the extent the ALJ did

not, any error was harmless.  Supp. Opp. at 1-3.

Under 20 C.F.R. § 404.977(b), an "administrative law judge shall take any action that is

ordered by the Appeals Council and may take any additional action that is not inconsistent with

the Appeals Council's remand order." !Plaintiff is correct that certain courts in this Circuit have

found that a district judge lacks authority to determine whether an ALJ has complied with a remand

order.  As articulated by the court in *Kissell v. Berryhill*, No. 17-cv-02203, 2018 WL 4207746, at

*5-6 (M.D. Pa. Sep. 4, 2018):

> Section 405(g) of the Social Security Act limits judicial review to a
> particular type of agency action, a "final decision of the Secretary
> made after a hearing."  *Califano v. Sanders,* 430 U.S. 99,108 (1977)
> (cited in the Government's brief at 6).  Numerous courts in our
> circuit have relied upon this principle to hold that district courts lack
> the authority to consider whether an ALJ complied with a remand
> order of the Appeals Council.  *See, e.g.*, *Ford v. Colvin*, 2015 WL
> 4608136 (D. Del. July 31, 2015); *Pearson v. Colvin,* 2015 WL
> 9581749 (D.N.J. December 30, 2015); *Scott v. Astrue,* 2007 WL
> 1725252 (E.D. Pa. June 12, 2007).  "The appropriate focus for
> review is upon the ALJ's final decision, not the prior Appeals
> Council remand order." *Pearson, supra at *4.*
>
> Plaintiff cites no legal authority to contradict the preceding
> authorities in her brief.  Accordingly, we must reject Plaintiff's
> assignment of error regarding the ALJ's alleged failure to comply
> with the Appeals Council's remand order of December 21, 2015.

The Court finds the reasoning of the *Kissell* court to be persuasive.  However, Plaintiff also

correctly notes that other district courts have found that an ALJ commits "legal error" if the ALJ

fails to take an action ordered by the Appeals Council or takes action inconsistent with a remand

order.  *See, e.g.*, *David Allen S. v. Saul*, No. 19-cv-00376, 2021 WL 907103, at *5 (E.D. Wash.

Mar. 9, 2021) (citations omitted).  The Court's concern with the potential reach of such a

conclusion is that if a court otherwise finds an ALJ's decision to be supported by substantial

evidence, a remand based on such legal error would constitute an exercise in futility.  Nevertheless, to the extent the legal error standard applies, the Court finds that any arguable error by the ALJ in this matter was harmless.  Here, the ALJ addressed a key concern articulated by the Appeals Council, that is, the ALJ had not addressed an apparent contradiction in his opinion.  R. at 145.  The ALJ had accorded "great weight" to a report from Yair Litvin, M.D., but the doctor had also opined that Plaintiff could sit less than six hours a day.  *Id.*  On remand, the ALJ gave Dr. Litvin's opinion partial weight because the sitting limitations were contradicted by other medical evidence and Plaintiff's daily functioning.  *Id.* at 21-22.

## C.    Plaintiff's Remaining Arguments

As noted, Plaintiff makes three additional arguments:  the ALJ erred at step three; the ALJ failed to properly consider Plaintiff's chronic pain syndrome; and the ALJ failed to articulate proper support for the RFC.

As to step three, Plaintiff asserts that the ALJ did not conduct an adequate analysis of Listing 1.04 and failed to consider medical equivalency.  Br. at 24.  The ALJ found that Listing 1.04 was not met because there was "no evidence of nerve root compression with the required characterizations, spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication that results in inability to ambulate effectively."  R. at 18.[1]  Plaintiff states in conclusory fashion, without citation to the record, that he meets this listing.  Br. at 26.  The Court's independent review of the record does not reveal evidence that reflects that listing was met.  As to medical equivalency, Plaintiff claims that "the multiple extensive surgeries required and the failure of all treatment to alleviate the radiating pain (as required to make the diagnosis of post-laminectomy syndrome)

---

[1] For example, in September 2014, Plaintiff's gait and coordination were normal.  R. at 539.

would lead to the necessity to evaluate whether the medical equivalence as described in Social Security Ruling (SSR) 17-2p[.]" *Id.* However, Plaintiff fails to provide any legal support for this argument. Again, the Court is not independently aware of a medical equivalency finding based on a plaintiff's number of surgeries and continuing complaints of pain. To the extent Plaintiff is asserting that a more robust medical equivalency analysis should have been performed, the Court finds that any such error was harmless because Plaintiff has not established that such an analysis could have led to a different outcome. Plaintiff's appeal is denied on these grounds.

Plaintiff next argues that the ALJ did not adequately consider his chronic pain syndrome. *Id.* at 27. 20 C.F.R. § 404.1529 sets forth the information that an ALJ must consider in evaluating a plaintiff's complaints of pain. As to the deference provided to an ALJ's credibility determinations, the Third Circuit has remarked that they are "'virtually unreviewable on appeal.'" *Hoyman v. Colvin*, 606 Fed. App'x 678, 681 (3d Cir. 2015) (quoting *Beiber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Here, Plaintiff undoubtedly had a number of surgeries on his cervical spine. The point of contention, however, concerns Plaintiff's statements as to his ongoing pain. The ALJ made the following finding on this point:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. at 20. The record reflects substantial evidence to support the ALJ's determination. After Plaintiff's first surgery, his neck and arm paid had "significantly improved," he had good range of motion of his neck, and he was overall "doing fairly well." *Id.* at 558. Three weeks after his second surgery, Plaintiff reported that he felt "very well," that his left arm pain had resolved, and

that he had minimal neck pain.  *Id.* at 553.  An earlier EMG of his left arm also showed that it was normal.  R. at 534, 557.  Plaintiff had normal strength (5/5) in 2014, 2015, 2016; he had a good range of motion in his neck 2015; and he had full range of motion in his extremities in 2016.  *Id.* at 539, 548 729, 625, 626, 654, 662, 668, 673, 679, 718.  In March 2015, Plaintiff's orthopedist indicated that "on exam has really a totally negative exam.  He is a fit individual.  Motor, vascular, and sensory are all normal.  Negative straight leg raising.  Reflexes are normal.  Sensation is normal.  Pulses are normal and everything is normal."  R. at 628.  Plaintiff's appeal is denied on this ground.

Finally, Plaintiff asserts that the ALJ did not adequately articulate his reasoning for the RFC.  Br. at 29.  Plaintiff for the most part takes issue with the ALJ's characterization of two exhibits.  *Id.* at 30 (citing Exhibits 3F & 9F).  Plaintiff's argument has some merit, in that the exhibits referred to do not fully comport with the ALJ's characterization.  For example, Exhibit 3F does indicate that the "cranio-vertebral junction is unremarkable[,]" that there is "no central spinal stenosis[,]" and that the "[h]emangioma demonstrated in the C7 vertebral body, stable since the prior study."  R. at 459.  At the same time, the exhibit indicates that the central "disc ridge complex at C4-5 more prominent than on the study of 6/3/02."  *Id.*  The ALJ's decision, however, was not limited to a review of these two exhibits.  Instead, the ALJ considered additional medical evidence and then reviewed the opinion evidence in detail.  *Id.* at 20-22.  The ALJ adequately articulated his reasons for the RFC, which was supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner of Social

Security.  An appropriate Order accompanies this Opinion.

Dated: January 6, 2022

_____
John Michael Vazquez, U.S.D.J.